**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ALBERT F. LANKSTER, SR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **CIVIL ACTION 13-0045-WS-C** |
| | ) |
| **AT&T, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on Motions to Dismiss (docs. 6, 18) filed by defendants Mitzi Thomas and AT&T.  Both Motions have been briefed and are now ripe for disposition.[1]

**I.      Relevant Background.**

On January 29, 2013, plaintiff, Albert F. Lankster, Sr., proceeding *pro se*, filed a Complaint (doc. 1) in this District Court against named defendants AT&T, Verizon Wireless, Apple Incorporated, and Mitzi Thomas.  According to the allegations of the Complaint, defendant AT&T promised Lankster a rate of $59.95 per month for subscribing to its U-verse service, then sent him a bill for $289.46 and refused to transmit an apology to him.  As for the remaining defendants, Lankster alleges that defendant Thomas (a Verizon employee) sold him an Apple phone with a Verizon contract by assuring him that a Verizon agent would visit his home to demonstrate "how to connect the Iphone to your Home computer," only for that agent to refuse.  (*Id.* at 3.)  Lankster further complains that Verizon charged him data fees "[f]or unwelcome/unwanted advertisements sent To his Iphone."  (*Id.* at 4.)  Plaintiff maintains that he

---

[1]      Also pending is plaintiff's Motion to Quash (doc. 34), in which he argues that AT&T's Motion to Dismiss should be "quashed" for failure to file a supporting brief pursuant to Local Rule 7.1(a).  The Motion to Quash is **denied**.  Reviewing AT&T's filing in context, the factual and legal bases of the Motion to Dismiss are pellucidly clear.  No further elaboration or briefing was required or would have been reasonably helpful to the Court or to plaintiff in identifying the grounds for the two Rule 12(b)(1) Motions.

would not have entered into the Verizon contract had he known that defendant Thomas "was making EMPTY AND FALSE PROMISES," which have caused him injury in the form of a $57.00 increase in his monthly telephone bill, a $2,040 two-year contractual commitment, and "[l]aceration of his feelings." (*Id.*)

Lankster devotes approximately two-thirds of his Complaint to a discussion of his common-law claims, which he frames as sounding in actual and constructive fraud. No other legal theories, claims or causes of action are identified in the Complaint. In his prayer for relief, Lankster requests an award of punitive damages in the amount of $100,000 payable to the Salvation Army, and another award of punitive damages in the amount of $100,000 payable to Lankster's church.

The Federal Rules of Civil Procedure require a plaintiff to include in his initial pleading "a short and plain statement of the grounds for the court's jurisdiction." Rule 8(a)(1), Fed.R.Civ.P. In an effort to satisfy this requirement, Lankster begins his Complaint as follows: "JURISDICTIONAL STATEMEMENT: Under 28 U. S. C. 1332, this Court has jurisdiction Over the parties and the subject matter based Diversity of Citizenship." (Doc. 1, at 2.) Defendants Thomas and AT&T have now moved for dismissal of the Complaint under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction.

## II. Analysis.

### A. *Applicable Legal Standard.*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1289 (11th Cir. 2012) (citation omitted); *see also Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1179 (11th Cir. 2011) ("Subject matter jurisdiction of the lower federal courts is determined by Congress in the exact degrees and character to which Congress may seem proper for the public good.") (citation and internal quotation marks omitted). Simply put, federal courts "only have the power to hear cases over which the Constitution or Congress has given them authority." *Title Pro Closings, L.L.C. v. Tudor Ins. Co.*, 840 F. Supp.2d 1299, 1302 (M.D. Ala. 2012). If a federal court oversteps those bright-line boundaries, "it violates the fundamental constitutional precept of limited federal power." *Griffith v. Wal-Mart Stores East, L.P.*, 884 F. Supp.2d 1218, 1221 (N.D. Ala. 2012) (citations omitted).

What this means is that this Court bears an affirmative obligation to scrutinize the Complaint to ensure that the plaintiff has stated an adequate jurisdictional basis before allowing the lawsuit to proceed further.  Lankster filed his Complaint in federal court and invoked federal jurisdiction; therefore, it is his burden to demonstrate the existence of subject matter jurisdiction. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("The party commencing suit in federal court … has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (similar).  Contrary to plaintiff's contention, it is not the burden of defendants filing Rule 12(b)(1) motions to establish that federal jurisdiction is lacking.[2]

> **B.      Federal Jurisdiction is Lacking Over the Complaint as Pleaded.**

As Thomas and AT&T point out in their Motions to Dismiss, the Complaint on its face suffers from a glaring jurisdictional defect.  Lankster predicates subject matter jurisdiction exclusively on the diversity provisions of 28 U.S.C. § 1332.  "For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000." *Osting-Schwinn*, 613 F.3d at 1085 (citations omitted).  "Complete diversity" means just what it says, to-wit:  "[E]very plaintiff must be diverse from every defendant." *Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, --- F.3d ----, 2013 WL 673156, *1 (11th Cir. Feb. 26, 2013) (citation omitted).  Plaintiff is clearly an Alabama citizen for diversity purposes.

---

[2]      A plaintiff is not relieved of his jurisdictional burden simply because he does not have a lawyer.  To be sure, the law is clear that "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  But Lankster's *pro se* status does not excuse him from compliance with procedural rules and court orders. *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 n.2 (11th Cir. 2011); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that "we are to give liberal construction to the pleadings of pro se litigants," but that "we nevertheless have required them to conform to procedural rules") (citation omitted); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (a *pro se* party "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure," and may be sanctioned "for failure to comply with court orders"); Local Rule 83.9(b).  Nor does the leniency afforded *pro se* litigants give this Court license to serve as *de facto* counsel for Lankster or to rewrite otherwise deficient pleadings to help him navigate past the Rule 12(b)(1) challenges posed by Thomas and AT&T. *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

So is one of the defendants, Mitzi Thomas.  Plaintiff offers neither evidence nor specific factual allegation as to Thomas's domicile; rather, he merely states in one of his briefs that "[i]t is believed that Ms. Thoms resides out- side the State of Alabama" (doc. 27, at 4), and that he believes she lives in Mississippi.  Such vague, inchoate statements of belief are inadequate to satisfy Lankster's burden of proving that complete diversity exists.  Moreover, Thomas has furnished the Court with an affidavit documenting her residence (and, by all appearances, her domicile) in Sumter County, Alabama.  (Doc. 32, ¶ 3.)  Thomas confirms that she has never lived in Mississippi, and that she resided and worked in Alabama at all material times.  (*Id.*, ¶¶ 4-5.)[3]  In short, all information in the court file reflects that Thomas is domiciled in Alabama and is an Alabama citizen for § 1332 purposes, just as Lankster is.

This circumstance negates diversity jurisdiction, and would ordinarily compel immediate dismissal of this action for want of federal jurisdiction.  *See generally Osting-Schwinn*, 613 F.3d at 1092 ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.") (citation omitted); *Guevera v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) ("If the court finds that it does not have subject matter jurisdiction, the court's sole remaining act is to dismiss the case for lack of jurisdiction.") (citation and internal quotation marks omitted).

In an effort to avoid dismissal, plaintiff has filed no fewer than three responses to these Motions to Dismiss.  (*See* docs. 25, 27, 29.)  Many of his arguments are patently meritless; however, four warrant brief discussion.  First, in his first Opposition to Motion to Dismiss (doc. 25), Lankster asserts that federal jurisdiction arises under 18 U.S.C. § 1030; however, the Complaint is devoid of citations to that statute, much less any claims or allegations purporting to state a cause of action against any defendant for violation of § 1030.  On its face, the Complaint

---

[3]     The Court recognizes, of course, that the § 1332 citizenship inquiry turns on a party's domicile, rather than her residence.  *See, e.g., McCormick*, 293 F.3d at 1257 ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Slate v. Shell Oil Co.*, 444 F. Supp.2d 1210, 1215 n.9 (S.D. Ala. 2006) ("As a matter of law, a person residing in a particular state is not necessarily domiciled there, and therefore is not necessarily a citizen of that state.").  On the record provided by the parties, however, the Court has no information and no reason to believe that Thomas is domiciled in a state other than Alabama, or that her domicile and residence are divergent.  Certainly, Lankster has made no such showing, which is his burden under applicable law.

lacks anything that could even liberally be construed as a claim for relief under § 1030; therefore, that statute cannot logically or legally furnish a basis for federal jurisdiction here. Second, in another filing styled "Plaintiff's Consolidated Reply" (doc. 27), Lankster states that federal jurisdiction is conferred by "F.C.C. rules and regulations" which he contends defendant Verizon violated. Once again, however, nothing in his Complaint yields even the faintest inference that Lankster is attempting to assert a claim or cause of action against Verizon for violation of any regulation of the Federal Communications Commission. The presence or absence of subject matter jurisdiction is evaluated by reference to claims actually asserted in a pleading, as opposed to hypothetical causes of action that the plaintiff never actually presented in his complaint. *See generally GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("[a] district court may not infer claims other than those that plainly appear on the face of the complaint") (citations and internal quotation marks omitted).[4] Because the Complaint cannot even liberally be viewed as stating a claim against any defendant for violation of FCC rules or regulations, those provisions cannot give rise to federal question jurisdiction here.

Third, with respect to diversity of citizenship, Lankster demands that defendants provide strict proof of Thomas's Alabama citizenship. (Doc. 27, at 4.) This response to the Rule 12(b)(1) Motions fails because (i) the burden of proof on subject matter jurisdiction rests with plaintiff, not defendants, and (ii) in any event, the subsequently filed Affidavit of Mitzi Thomas

---

[4]        *See also Tatten v. Bank of America Corp.*, --- F. Supp.2d ----, 2012 WL 6568475, *2 (D. Colo. Dec. 17, 2012) (in reviewing *pro se* pleading, "[a] court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged"); *Toney v. LaSalle Bank Nat'l Ass'n*, --- F. Supp.2d ----, 2012 WL 4378574, *14 (D.S.C. Sept. 25, 2012) ("[t]he requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim"); *Richards v. British Petroleum*, 869 F. Supp.2d 730, 737 (E.D. La. 2012) ("[a] court need not conjure up unpled allegations or construe elaborately arcane scripts to save a complaint") (citation and internal quotation marks omitted); *Felts v. Cleveland Housing Authority*, 821 F. Supp.2d 968, 971 (E.D. Tenn. 2011) (district court is not required to create *pro se* plaintiff's claims for him because to do so would place court in improper role of advocate); *Chapman v. Western Express, Inc.*, 815 F. Supp.2d 1274, 1279 (S.D. Ala. 2011) (in *pro se* plaintiff context, "courts are not required to rewrite an otherwise deficient pleading in order to sustain  an action") (citation and internal marks omitted); *Williams v. Quality Filters, Inc.*, 2007 WL 4219201, *4 (S.D. Ala. Nov. 27, 2007) ("The Court therefore declines to construct causes of action for Williams that she could have raised but did not.").

is adequate to establish that defendant's non-diverse status, and to destroy diversity jurisdiction. Fourth, in his final responsive brief, Lankster indicates that the three corporate defendants are of diverse citizenship, and indicates that their diverse status allows this Court to exercise jurisdiction over them, irrespective of defendant Thomas's citizenship. (Doc. 29, at 1-2.) Plaintiff is mistaken. As discussed *supra*, § 1332 requires <u>complete</u> diversity between all plaintiffs, on the one side, and all defendants, on the other. If diversity is lacking as to even one defendant, subject matter jurisdiction cannot be invoked under § 1332 for any portion of the case; rather, diversity jurisdiction stands or falls for the case as a whole. In other words, the lack of diversity between Lankster and Thomas destroys diversity jurisdiction for the entire suit.

### C.      *Leave to Amend is Neither Required Nor Appropriate.*

In an unusual procedural maneuver (presumably borne from a desire to preserve a fortuitous federal forum for an exclusively state-law dispute as to which complete diversity is plainly lacking), two other defendants, Verizon Wireless and Apple Inc., have filed memoranda in opposition to their co-defendants' Rule 12(b)(1) Motions. In those filings, Verizon and Apple contend that Lankster should be afforded an opportunity to file an amended complaint to assert federal claims so as to create federal question jurisdiction under 28 U.S.C. § 1331.

The Court cannot agree. Plaintiff has shown no inclination and has articulated no request to amend his pleading to shore up jurisdictional infirmities that have been laid bare via the Rule 12(b)(1) Motions and associated briefing. Under the circumstances presented here, this Court will not issue him a formal invitation to do so. Of course, the general rule applied to *pro se* plaintiffs in this Circuit is that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).[5] But

---

[5] The Eleventh Circuit has since retreated from *Bank* in the context of plaintiffs represented by counsel. *See Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). But the *Wagner* holding has not been extended to unrepresented parties; to the contrary, the Eleventh Circuit has continued to adhere to the *Bank* rule where *pro se* plaintiffs are involved. *See Edwards v. Fernandez-Rundell*, 2013 WL 1104129, *1 (11th Cir. Mar. 18, 2013) ("our decision in *Wagner* did not disturb our decision in *Bank* with respect to a *pro se* litigant's right to amend"); *Jemison v. Mitchell*, 2010 WL 2130624, *2 (11th Cir. May 27, 2010) ("When it appears that a *pro se* plaintiff's complaint, (Continued)

the Rule 12(b)(1) dismissal of Lankster's Complaint would be *without* prejudice, not *with* prejudice, thereby removing this case from the purview of *Bank*.  *See Quinlan v. Personal Transport Services Co.*, 2009 WL 1564134, *2 (11th Cir. June 5, 2009) ("we never have stated that a district court *sua sponte* must allow a plaintiff an opportunity to amend where it dismisses a complaint *without prejudice*"); *Bazrowx v. Scott*, 136 F.3d 1053, 1054-55 (5th Cir. 1998) (dismissal of *pro se* complaint without granting leave to amend was proper where dismissal was without prejudice); *Williams v. Quality Filters, Inc.*, 2007 WL 4219201, *5 n.5 (S.D. Ala. Nov. 27, 2007) ("where, as here, a plaintiff's claims are dismissed without prejudice, any harm to plaintiff by virtue of not granting her leave to amend her complaint *sua sponte* prior to dismissal is attenuated").

     More fundamentally, it is apparent that any federal claim Lankster might try to interpose against these defendants pursuant to 18 U.S.C. § 1030 or 47 C.F.R. § 27.16 would be futile (*i.e.*, a more carefully drafted complaint would <u>not</u> state a colorable claim against defendants under the aforementioned federal provisions).  The touchstone of a § 1030 claim is that the defendant accessed a computer without authorization or in a manner that exceeds authorized access.  But Lankster has not identified any facts suggesting that any defendant accessed his iPhone in a manner that he did not authorize; rather, he appears to be complaining about unwanted advertisement-laden telephone calls or messages he received.  The Court is aware of no authorities, and the parties have cited none, suggesting that such communications constitute "access" within the meaning of 18 U.S.C. § 1030.  (It cannot logically be the law that every advertisement sent to a smartphone via ordinary communications pathways without the user's express prior consent is "access" equating to a CFAA violation.)  Certainly, there has been no suggestion that any defendant procured, altered or obtained information or data from Lankster's device without his authorization; that it hacked the device; that it obtained anything of value from the device; that it damaged the device; or that any prerequisites for a § 1030(g) private action are satisfied here.  In short, § 1030 appears to have no plausible connection to the underlying facts of this case, such that any attempt by Lankster to amend his Complaint to assert

---

if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice.").  Thus, *Bank* remains good law in cases involving *pro se* plaintiffs.

a federal statutory claim under the Computer Fraud and Abuse Act would be a pointless, futile exercise.

Similarly, with respect to the FCC regulation, it provides that "[l]icensees offering service on spectrum subject to this section shall not deny, limit, or restrict the ability of their customers to use the devices and applications of their choice on the licensee's C Block network." 47 C.F.R. § 27.16(b). Even if this regulation gives rise to a private right of action (which the parties have neither shown nor suggested to be so), the facts alleged by Lankster would not support such a claim. Plaintiff's allegations are that Verizon declined to come to his home or to meet him at a public library to show him how to connect his iPhone device to a WiFi network. Such a failure to provide instruction, technical support, or product demonstration in a manner that plaintiff deems most convenient is not rationally tantamount to a denial, limitation or restriction on Lankster's ability to use a device of his choice on Verizon's network. No party has proffered either facts or law that might support a colorable claim under § 27.16(b) here.

The bottom line is simple: Federal courts are not bound *sua sponte* to provide a *pro se* litigant an opportunity to state a federal claim to ameliorate a jurisdictional defect, where the Complaint is being dismissed without prejudice. Moreover, neither Lankster nor the two defendants endeavoring to help him conjure federal jurisdiction out of thin air have identified facts or principles of law that might reasonably enable Lankster to pursue colorable claims for violation of 18 U.S.C. § 1030 or 47 C.F.R. § 27.16(b). In short, there is no reason to think that a more carefully crafted complaint might support federal subject matter jurisdiction against this constellation of defendants. At any rate, if Lankster is truly committed to pursuing federal claims, nothing in this Order would prevent him from filing a new federal lawsuit against some or all of the named defendants herein with a proper jurisdictional and factual predicate.

**III. Conclusion.**

For all of the foregoing reasons, the Motions to Dismiss (docs. 6, 18) filed by defendants Mitzi L. Thomas and AT&T are **granted**. Pursuant to Rule 12(b)(1), Fed.R.Civ.P., this action is **dismissed without prejudice** for lack of federal subject matter jurisdiction. A separate judgment will enter.

DONE and ORDERED this 4th day of April, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE